# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JARED EDWARD BEEBE,

    Plaintiff

v.

NEVADA DEPARTMENT OF
CORRECTIONS DIRECTOR, et. al.,

    Defendants

Case No.: 3:19-cv-00038-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 79

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 79, 79-1 to 79-3, 81-1 to 83-4, errata at ECF Nos. 85-1, 85-1.) Plaintiff filed a response. (ECF No. 84.) Defendants filed a reply. (ECF No. 87.) Plaintiff filed a response to Defendants' reply (ECF No. 89), which the court has stricken. (ECF No. 90.)

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 10.) The events giving rise to this action took place while Plaintiff was housed at Warm Springs Correctional Center (WSCC) (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment conditions of confinement claim against defendants Robert Suwe and Bryan Wilcoxen. (ECF No. 9.)

Plaintiff alleges that on June 19, 2018, he (along with other inmates) was notified at 8:45 p.m., that he was to report to administration when the 8:30 p.m. count had cleared. Based on the timing, Plaintiff believed he would be required to submit to urinalysis and began drinking water in preparation. Instead of being escorted to administration, Plaintiff was held in the sally port of Unit 4A for approximately one hour. During this time, inmates were not allowed to return to their cells or use the restroom.

Approximately one hour later, Plaintiff avers that Wilcoxen came to escort the inmates to administration. Plaintiff asked to use the urinal at this time, but his request was denied. Wilcoxen told Plaintiff he would notify administrative staff of Plaintiff's need to urinate.

Plaintiff was then secured in a hallway for 20-30 minutes. When Suwe came to begin processing inmates for urinalysis, Plaintiff asked to go first because he had to urinate so badly that it was physically painful. Suwe told Plaintiff that if he used the restroom, Suwe would file a report that Plaintiff refused a urinalysis. Plaintiff told Suwe he would rather use a restroom and get charged with refusal to submit to urinalysis than continue to be in physical pain. Suwe told Plaintiff if he had to go that badly, he should just urinate right there in the hallway with the other inmates.

Suwe then handcuffed Plaintiff's hands behind his back and put him in a small holding cell that did not have a toilet. While in the holding cell, Plaintiff passed out. When Plaintiff awoke, Suwe and Officer Hurt (not a defendant) were standing over him, and Plaintiff realized he had urinated in his clothes. They asked Plaintiff if he needed medical attention, and Plaintiff

responded that he did. When they moved Plaintiff into a seated position, Plaintiff felt extremely nauseous and disoriented, and his body seized violently and the left side of his body went numb. Suwe told Plaintiff to "quit faking it," and later gave Plaintiff a notice of charges for rioting or inciting others to riot. Plaintiff claims that he continues to experience periodic numbness in his limbs and light sensitivity. He alleges that a neurologist diagnosed him as having a neurovascular shutdown resulting from an overdistended bladder. An optometrist diagnosed the light sensitivity as neuropathy, which Plaintiff did not have before this incident.

Defendants move for summary judgment, arguing: the official capacity claims should be dismissed; Wilcoxen did not personally participate in the alleged violation of Plaintiff's Eighth Amendment rights; the harm alleged by Plaintiff is not sufficiently serious under the objective prong of the Eighth Amendment analysis; under the subjective prong of the Eighth Amendment analysis, there is no evidence that Suwe or Wilcoxen knew of and disregarded an excessive risk to Plaintiff's health; and Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

1  other hand, where reasonable minds could differ on the material facts at issue, summary

2  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

3      "The purpose of summary judgment is to avoid unnecessary trials when there is no

4  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

5  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose

6  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson*, 477

7  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

8  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

9  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

10  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

11  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

12  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*,

13  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

14  determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255;

15  *Anderson*, 477 U.S. at 249.

16      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

17  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

18  come forward with evidence which would entitle it to a directed verdict if the evidence went

19  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

20  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

21  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

22  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

23  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

4

1  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

2  party cannot establish an element essential to that party's case on which that party will have the

3  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

4        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

5  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

6  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

7  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

8  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

9  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

10 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

11 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

12 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

13 pleadings and set forth specific facts by producing competent evidence that shows a genuine

14 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

15                              **III. DISCUSSION**

16 **A. Official Capacity Claims**

17        Plaintiff checked the box indicating he is suing Suwe and Wilcoxen in both their official

18 and individual capacities. (ECF No. 10 at 3.)

19        A civil rights action may be brought against state actors in either their official or

20 individual capacities. An action against a government official in his or her official capacity is not

21 a suit against the individual, but rather a suit against the official's office. *Will v. Michigan Dept.*

22 *of State Police*, 491 U.S. 58 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

23

A state official sued in his or her official capacity for damages is not a person subject to suit under section 1983. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n. 24 (1997); *Will v Michigan Dep't of State Police*, 491 U.S. 58, 71 (1983); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). "[F]ederal courts are barred by the Eleventh Amendment from awarding damages against state officials acting in their official capacities[.]" *Snow v. McDaniel*, 681 F.3d 978, 991 (9th Cir. 2012) (citing *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003)). State officials sued in their official capacity for injunctive relief, however, are persons for purposes of section 1983. *See Will*, 491 U.S. at 71 n. 10; *Flint*, 488 F.3d at 825.

Plaintiff does not seek declaratory or injunctive relief in his complaint; therefore, Defendants are entitled to summary judgment insofar as they are sued in their official capacities.

**B. Eighth Amendment Conditions of Confinement**

**1. Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend. VIII. Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v.  McCarthy*, 801 F.2d 1080, 1107 (9th Cir.  1986), *abrogated in part on other grounds by Sandin v.  Connor*, 515 U.S. 472 (1995); *see also Johnson v.  Lewis*, 217 F.3d 726, 731 (9th Cir.  2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.  1982).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v.  Agnos*, 152 F.3d 1124, 1128 (9th Cir.  1998).  The deliberate

1  indifference standard involves an objective and subjective component.  First, the alleged

2  deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation

3  omitted).  Second, the prison official must "know of and disregard an excessive risk to inmate

4  health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth

5  Amendment for denying humane conditions of confinement only if he knows that inmates face a

6  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate

7  it." *Farmer*, 511 U.S. at 835.

8  Only deprivations of the minimal civilized measure of life's necessities are sufficient to

9  violate the Eighth Amendment. *Johnson*, 217 F.3d at 731. These are "deprivations of essential

10  food, medical care, or sanitation" or "other conditions intolerable for prison confinement."

11  *Rhodes*, 452 U.S. at 348. "The circumstances, nature, and duration of a deprivation of [ ]

12  necessities must be considered in determining whether a constitutional violation has occurred."

13  *Johnson*, 217 F.3d at 731. "The more basic the need, the shorter time it can be withheld."

14  *Hoptowit v. Ray*, 682 F.2d 1287, 1259 (9th Cir. 1982).

15  **2. Facts**

16  Each month, WSCC randomly selects five percent of the inmate population for

17  alcohol/drug testing. (ECF No. 79-2 at 2; ECF No. 79-3 at 2; ECF No. 84 at 72.) Urine

18  specimens are collected in a secure restroom clear of items or substances that may potentially be

19  used to adulterate the specimen. If an inmate is unable to produce a urine sample within one

20  hour, he will be given 8 ounces of water and placed in a holding cell. At the end of the hour, if

21  the inmate has not produced a sample of sufficient quantity, the inmate may be placed into

22  segregation and will receive an offense in custody. (ECF No. 79-2 at 3; ECF No. 79-3 at 3; ECF

23  No. 84 at 73.)

On June 19, 2018, Plaintiff and other inmates housed in his unit were notified at approximately 8:45 p.m. that they were to report to administration after 8:30 p.m. count had cleared. (ECF No. 10 at 5; ECF No. 79 at 2.) The report to administration was for a random urinalysis of inmates. (*Id.*)

Plaintiff claims that he began to drink water to prepare for the urinalysis. (ECF No. 10 at 5.) Plaintiff contends that after 8:30 p.m count cleared, the inmates were called out of their cells and were held in the sally port of the unit for approximately one hour (so, until around 9:45 p.m.). (ECF No. 10 at 5.)

Wilcoxen arrived to escort the inmates to administration. (ECF No. 10 at 6.) Plaintiff asked Wilcoxen to use the urinal, but that request was denied. (*Id*.) Wilcoxen told Plaintiff he would notify administration staff that Plaintiff needed to use the restroom. (*Id*.; ECF No. 84 at 19, Wilcoxen response to interrogatory 1.) Wilcoxen states that after all the inmates were brought to operations and were secured, he informed Suwe that Plaintiff needed to go to the restroom and asked if they could take Plaintiff first. (ECF No. 84 at 20, response to interrogatory 4, ECF No. 84 at 27, response to interrogatory 6.)

Plaintiff claims that once they got to the administration building, he and the other inmates were escorted to a hallway where they were secured for another 20-30 minutes. (ECF No. 10 at 6.) At this point it was probably between 10:05 and 10:15, based on Plaintiff's timeline of events. This is consistent with the investigation reports. (*See* ECF No. 79-1 at 3 (Hurt and Suwe were conducting urinalysis at approximately 10:10 p.m.); ECF No. 79-1 at 2 (noting that Suwe and Hurt were conducting urinalysis at approximately 10:15 p.m.); ECF No. 79-1 at 5 (Suwe states the interaction between him and Plaintiff began at approximately 10:13 p.m.).) Several

minutes later, Suwe approached Plaintiff to begin processing inmates for urinalysis. (ECF No. 10 at 6.)

Plaintiff claims that he approached Suwe and asked if he could go first because he could hardly hold his urine for much longer, and said he had to go so bad that it physically hurt. (*Id.*) Defendants acknowledge that Plaintiff notified Suwe of his need to urinate. (ECF No. 79 at 2.)

Plaintiff claims that Suwe told Plaintiff that if he were allowed to use the restroom Suwe would file a report that Plaintiff used the urinalysis before his turn. Plaintiff alleges that he told Suwe he would rather have a notice of charges than continue to be in pain for holding in his urine. Plaintiff contends that Suwe told him that if he had to go that bad, he should just go there in the hallway. (ECF No. 10 at 6-7.)

Suwe's report, on the other hand, states that Plaintiff and multiple other inmates were talking loudly inside the chapel hallway of operations and Suwe confronted them asking what the problem was. According to Suwe's report, Plaintiff responded : "I'm going to piss in the hallway." Suwe claims that he told Plaintiff that both inmate bathrooms were currently in use, but that Plaintiff was next in line for the urinalysis. Suwe contends that at this point Plaintiff began more aggressive and said, "I don't care" and "I'm going to piss right here." Multiple other inmates started saying they (correctional staff) better hurry up.  According to Suwe, Plaintiff continued to argue and was inciting other inmates. (ECF No. 79-1 at 5-6.) Officer Hurt's report similarly states that Plaintiff was talking to Suwe about needing to go to the bathroom at approximately 10:13 p.m., but at that time there were already two other inmates in the visiting room. (ECF No. 79-1 at 6.)

The parties agree that Suwe then applied restraints to Plaintiff's wrists behind his back and put Plaintiff in a temporary holding cell, and Suwe left the holding cell. (ECF No. 10 at 7;

ECF No. 79-1 at 5-6.) According to the investigative reports of Suwe, Hurt and Senior

Correctional Officer Patricia Franke, Suwe restrained Plaintiff at approximately 10:15 p.m. (ECF

No. 79-1 at 4-6.) These same reports, along with that of Lieutenant Arguello, state that Suwe

came back to the cell approximately five minutes later, at 10:20 p.m. (*Id.*)

Plaintiff claims that he blacked out or lost consciousness, and woke to see Suwe and

Officer Hurt standing over him, and realized her had urinated himself. (ECF No. 10 at 7.) Suwe's

and Hurt's reports state that they entered the cell to find Plaintiff on the ground on his right side,

shaking and not responding to questioning. (ECF No. 79-1 at 6-7.) Officer Hurt asked Plaintiff

whether he needed medical attention, and Plaintiff responded that he did, and claimed he fainted

from having to hold his urine in and that he had soiled himself. (*Id.*; ECF No. 10 at 7.) Plaintiff

was escorted to medical for evaluation. (ECF No. 10 at 8; ECF No. 79-1 at 6; ECF Nos. 81-1,

81-2, 81-3 at 6.) The officers' reports express some skepticism about whether Plaintiff actually

passed out. (ECF Nos. 79-1 at 4-7.)[1]

**3. Wilcoxen**

Wilcoxen argues that he did not personally participate in conduct that violated Plaintiff's

rights under the Eighth Amendment. Plaintiff alleges that he was held in the sally port for an

hour, and when Wilcoxen arrived to escort the inmates to administration, Plaintiff asked

Wilcoxen if he could relieve himself at a urinal that was along the route to administration, but

Wilcoxen denied his request.

Wilcoxen correctly contends that there is no allegation that Plaintiff notified him that

there was any urgency in the need to urinate, or that Wilcoxen knew that denying Plaintiff's

---

[1] In his response, Plaintiff provides statements from several inmates that are consistent with Plaintiff's version of events with respect to Suwe, but the statements are not under penalty of perjury. (ECF No. 84 at 13-16.)

1  request to use the restroom posed a risk of harm to Plaintiff's health. Plaintiff's response to

2  Defendants' motion merely repeats his allegation that when Wilcoxen was escorting them from

3  the sally port, Plaintiff asked Wilcoxen to use the nearby urinal, but  Wilcoxen denied Plaintiff's

4  request and told Plaintiff he would notify the officers in operations of Plaintiff's need to urinate.

5  (ECF No. 84 at 3.)

6       Plaintiff does not dispute that he only asked Wilcoxen once to use the restroom and did

7  not include any detail about the urgency or other information that suggests Plaintiff faced an

8  objectively sufficiently serious risk to his health, or that Wilcoxen knew that the denial of the

9  request to use the restroom posed a risk to Plaintiff's health. Therefore, summary judgment

10  should be granted in Wilcoxen's favor.

11     **4. Suwe**

12      Suwe points out that sometime between 10:10 and 10:15 p.m., Plaintiff first approached

13  him about his need to urinate, and only several minutes passed between that interaction and when

14  Plaintiff was restrained in the holding cell and then Suwe found him on the floor of the holding

15  cell. Suwe argues that such a temporary denial of access to the restroom does not rise to the level

16  of an objectively serious deprivation so as to violate the Eighth Amendment.

17       Plaintiff also provides Suwe's discovery responses, which actually support Suwe's

18  position. Suwe responded in discovery that when Plaintiff asked him to use the restroom, but

19  both inmate bathrooms were in use, and if a bathroom would have been open, he would have

20  allowed Plaintiff to use it. (ECF No. 84 at 48, response to interrogatory 2.) In another response,

21  Suwe said that Plaintiff did not speak up about his urgent need to use the restroom until both

22  restrooms were occupied, and so no vacant restroom was available. (ECF No. 84 at 55, response

23  to interrogatory 14.) In yet another response, Suwe acknowledged that Plaintiff was aggressively

1  arguing about how staff needed to let him urinate right away or he would urinate in the hallway.

2  (ECF No. 84 at 57, response to interrogatory 17.)

3      Again, "[a]lthough routine discomfort inherent in the prison setting is inadequate to

4  satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the

5  minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

6  Eighth Amendment violation." *Johnson*, 217 F.3d at 731 (quotation marks and citations omitted).

7  These are "deprivations of essential food, medical care, or sanitation" or "other conditions

8  intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. "The circumstances, nature, and

9  duration of a deprivation of these necessities must be considered in determining whether a

10  constitutional violation has occurred." *Johnson*, 217 F.3d at 731. "The more basic the need, the

11  shorter time it can be withheld." *Hoptowit v. Ray*, 682 F.2d 1287, 1259 (9th Cir. 1982).

12      "[A] lack of sanitation that is *severe or prolonged* can constitute an infliction of pain

13  within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310,

14  1314, *as amended,* 75 F.3d 448 (9th Cir. 1995) (emphasis added).

15      *Johnson v. Lewis* involved two separate instances where inmates were held outside on the

16  prison yard. In the first instance, 638 inmates were held outside for four days. For some of that

17  time, there was no access to restrooms. For the whole first night, the inmates were not allowed to

18  move from the prone position for any reason, even to use the restroom. The next morning, two

19  portable toilets were brought into the yard for 638 inmates, and by that point  "some of the

20  inmates had urinated or defecated into their clothing, which they [had to] wear for the rest of the

21  time in the yard." Sometime later that day, the inmates were allowed to use some of the indoor

22  restroom facilities. *Johnson*, 217 F.3d at 730. During the second instance, inmates were kept

23  outside in the yard while an investigation was completed that took 17 hours. "When the inmates

1  needed to urinate, the guards allowed them to get to their knees, crawl a few feet from where

2  they lay, and relieve themselves on the ground." *Id*. The inmates were so close together,

3  however, that sometimes they urinated on their neighbors, or the urine would pool and run into

4  other inmates. *Id*.

5      The Ninth Circuit said it had "no doubt that toilets can be unavailable for some period of

6  time without violating the Eighth amendment," but the testimony presented in *Johnson* would

7  "allow a fact-finder to conclude that the plaintiffs suffered a sufficiently serious deprivation to

8  violate the Eighth Amendment." *Id*. at 733.

9      In *Hope v. Pelzer,* 536 U.S. 730, 757 (2002), the Supreme Court held that chaining an

10 inmate to a hitching post, without his shirt, for approximately seven hours, and only giving him

11 water once or twice, and not giving him restroom breaks was an obvious violation of the Eighth

12 Amendment. *Hope*, 536 U.S. at 737.

13     *Johnson* recognized, and courts have held, however, that lack of access to toilets for

14 shorter or temporary periods of time does not violate the Eighth Amendment. *See*

15 *Festa v. Sandoval*, No. 2:17-cv-00850-APG-NJK, 2020 WL 2114358 (D. Nev. May 4, 2020)

16 (lack of access to restroom for an hour and a half did not rise to the level of an objectively

17 sufficiently serious deprivation, and there was no clearly established law that 90-minute denial of

18 access to the restroom would violate the Eighth Amendment); *Harley v. Quindiahjen*,

19 19CV1607-MMA (LL), 2019 WL 5578232, at *4-5 (S.D. Cal. Oct. 29, 2019) (finding that claim

20 of being denied access to a functioning toilet for less than a day was insufficient to state an

21 Eighth Amendment claim); *Eckard v. Walters*, 2019 WL 8060137 (W.D. Wash. July 3, 2019),

22 report and recommendation adopted 2019 WL 6650604 (W.D. Wash. Dec. 6, 2019) (placement

23 in cell without a toilet or urine receptable for eight hours and being forced to 'cohabitate' with

urine for one hour did not state an Eighth Amendment claim); *Salinas v. Cty. of Kern*, No. 1:18-cv-00235-BAM (PC), 2018 WL 5879703, at *4 (E.D. Cal. Nov. 7, 2018) (allegation that inmate was denied access to a restroom and water for nine hours was insufficient to state an Eighth Amendment claim); *Jones v. AZ Scotland*, No. 2:12-cv-00633 TLN DB P, 2017 WL 1064681, at *13 (E.D. Cal. Mar. 21, 2017) (temporary deprivation of access to a restroom for two hours did not pose a serious threat of harm to support an Eighth amendment claim); *Nordlund v. Washington State Dept. of Corr.*, No. C14-5217 BHS, 2015 WL 1867119, at *11 (W.D. Wash. Apr. 23, 2015) (deprivation of access to a restroom, of up to seven and a half hours on one day, and nearly four and a half hours on another day did not violate the Eighth Amendment); *Saenz v. Reeves*, No. 1:09-cv-00557-BAM PC, 2012 WL 4049975, at *14 (E.D. Cal. Sept. 13, 2012) (denying access to a toilet for five and a half hours on one occasion and four and a half hours on another occasion were not a sufficiently serious deprivation to violate the Eighth Amendment); *Gunn v. Tilton*, No., CV 08-1039-phx-SRB, 2011 WL 1121949 (E.D. Cal. Mar. 23, 2011) (denial of access to toilet for three to four hours was temporary and did not rise to the level of an Eighth Amendment violation); *Kanick v. Nevada*, No. 3:08-cv-00397-ECR-VPC, 2010 WL 2162324, at *5-6 (D. Nev. Apr. 27, 2010) (temporary deprivation of access to a proper toilet, for up to two hours, did not violate the Eighth Amendment).

Here, Plaintiff alleges that they got the order to go to administration at 8:45 p.m., and he does not dispute that by the time he claims to have passed out it was approximately 10:20 p.m. The total time he was deprived use of the restroom was less than two hours.

The court finds that this temporary deprivation of access to the restroom does not constitute a sufficiently serious deprivation under the objective prong of the Eighth Amendment analysis.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). "The plaintiff 'bears the burden of showing that the rights allegedly violated were clearly established.'" *Id*. at 969 (quoting *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)).

Even if this could be considered an objectively sufficiently serious deprivation under the Eighth Amendment, the court agrees that Plaintiff has not identified clearly established law that would have put Suwe on notice that a temporary denial of access to the restroom under the circumstances that occurred here would violate Plaintiff's Eighth Amendment rights. Therefore, alternatively, Suwe is entitled to qualified immunity. *See Festa v. Sandoval*, 2020 WL 2114358 at *4 (finding that 90-minute deprivation of access to restroom was not objectively sufficiently serious, but even if it were, the plaintiff did not identify clearly established law that put the defendant on notice that such a denial would violate the plaintiff's Eighth Amendment rights).

In sum, summary judgment should also be granted in Suwe's favor.

Plaintiff's response mentions many times that Suwe used unnecessary force when he handcuffed Plaintiff after asking to use the restroom several times; however, Plaintiff is not proceeding with an excessive force claim in this action. Plaintiff also raises an issue about Suwe searching his property after the incident, but he does not have a claim related to these allegations in this action. Plaintiff also discusses his medical treatment and procedural requirements, but he also does not have claims proceeding with respect to these issues.

**IV. RECOMMENDATION**

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 79).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: November 1, 2021

_____
William G. Cobb
United States Magistrate Judge

16